# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DAVID BERRIDGE,

                  Plaintiff,

      v.

NALCO COMPANY,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

No. 2:10-cv-03219 (JHR) (KW)

---

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER AND TO ELIMINATE EVIDENCE OR SEAL

---

Seyfarth Shaw LLP
620 Eighth Avenue
New York, New York 10018
(212) 218-5500
Attorneys for Defendant
Nalco Company

Motion Date:  June 20, 2011

<u>Oral Argument Requested</u>

Of Counsel and On the Brief

    Mark A. Lies II
    Douglas B. Lipsky
    Howard M. Wexler

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................... iii

PRELIMINARY STATEMENT ................................................. 1

STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY .............................. 3

LEGAL ARGUMENT ................................................................ 5

I.    To The Extent Berridge's Motion Goes Beyond What the Court Granted Him Leave to File, Those Parts of His Motion Should Be Disregarded ................ 5

II.    Berridge Puts Forth No Cognizable Legal Argument Or Competent Evidence To Warrant a Protective Order to Bar Nalco From Obtaining Relevant Discovery From His Current Employer, and His Likely Prospective Employers Should He Decide to Separate From His Current Employer ................................................................ 6

    A.    To Ensure that Nalco Has Obtained All of the Necessary, Relevant Discovery Regarding Berridge's Current Employment, Nalco Is Entitled to Receive This Information Directly From His Current Employer and Berridge's Motion for a Protective Order to Bar Nalco From Doing So Should Accordingly Be Denied. ............................ 8

        1.    Nalco Has A Substantial Need For The Requested Discovery, As It Is Particularly Relevant to Critical Issues ............ 8

        2.    Berridge Offers No Reliable, Alternative Method to Produce This Discovery. .............................................. 10

        3.    Berridge Fails to Satisfy His Required Burden of Proof That the Requested Discovery Will Work A Clearly Defined, Serious Injury or Is Designed to Harass Him, Warranting a Protective Order. .................................... 11

        4.    Berridge Conflates The Governing Legal Standard For The Issuance of a Protective Order ...................................... 13

    B.    A Protective Order Should Not Issue Barring Nalco From Obtaining Discovery Directly From The Seven (7) Prospective Employers Berridge Submitted Resumes To, As Such Information Is Relevant To His Mitigation Of Damages And Constitutes After-Acquired Evidence ................................................. 14

i

III.    As the Information that the DOL Produced Is Relevant As After-Acquired
        Evidence and this Matter Is Only In the Early Stages of Discovery,
        Berridge's Apparent Motion In Limine or Motion for a Protective Order to
        Eliminate/Suppress/Seal the Information Should Be Denied ...............................16

IV.     Berridge's Motion to Seal Discovery Obtained From the DOL and Likely
        to Be Obtained From Berridge's Potential Prospective Employers Is
        Procedurally and Substantively Flawed.................................................................19

CONCLUSION.....................................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Behrens v. Rutgers Univ.*,
  Civ. No. 94-358, 1995 U.S. Dist. LEXIS 22030 (D.N.J. Aug. 9, 1995)...................................9

*Bradley v. Pittsburgh Bd. of Educ.*,
  913 F.2d 1064 (3d Cir. 1990)...............................................................................18

*Cipollone v. Liggett Group, Inc.*,
  785 F.2d 1108 (3d Cir. 1986).........................................................................7, 15

*Clark v. Prudential Ins. Co. of Am.*,
  Civ. No. 08-6197, 2011 U.S. Dist. LEXIS 51486 (D.N.J. May 13, 2011) .............................19

*Cohen v. Kurtzman*,
  45 F. Supp. 2d 423 (D.N.J. 1999) ......................................................................11

*E.E.O.C. v. Woodmen of the World Life Ins. Soc'y*,
  No. 8:03 CV 15, 2007 WL 64298 (D. Neb. Feb. 1, 2007).........................................9

*Faulman v. Sec. Mut. Fin. Life Ins. Co.*,
  Civil No. 04-5083, 2006 U.S. Dist. LEXIS 35875 (D.N.J. May 31, 2006).....................20, 21

*FTC v. Dutchman Enters., LLC*,
  2:09-cv-141, 2010 U.S. Dist. LEXIS 78118 (D.N.J. Aug. 2, 2010).......................................12

*Graco, Inc. v. PMC Global, Inc.*,
  08-1304, 2011 U.S. Dist. LEXIS 30980 (D.N.J. Mar. 24, 2011) .............................................7

*Gragossian v. Cardinal Health, Inc.*,
  07CV1818, 2008 U.S. Dist. LEXIS 55680 (S.D. Cal. July 21, 2008).....................................9

*Hite v. Peters*,
  No. 07-4492, 2009 U.S. Dist. LEXIS 51894 (D.N.J. June 19, 2009)............................. *passim*

*In re Japanese Elec. Prods. Antitrust Litig.*,
  723 F.2d 238 (3d Cir. 1983) *rev'd on other grounds, Matsushita Elec. Indus. Co. v.*
  *Zenith Radio Corp.*, 475 U.S. 574 (1986)...........................................................13

*In re Nautilus Motor Tanker Co.*,
  85 F.3d 105 (3d Cir. 1996)...............................................................................13

*Lanni v. New Jersey*,
  177 F.R.D. 295 (D.N.J. 1998)..........................................................................18

*Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*,
    998 F.2d 157 (3d Cir. 1993)........................................................................18, 19

*Mardell v. Harleysville Life Ins. Co.*,
    65 F.3d 1072 (3d Cir. 1995)...............................................................................17

*Massey v. Trump's Castle Hotel & Casino*,
    828 F. Supp. 314 (D.N.J. 1993) ........................................................................17

*Miller v. Beneficial Management Corp.*,
    855 F. Supp. 691  (D.N.J. 1994) .......................................................................17

*Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*,
    135 F.R.D. 101 (D.N.J. 1990)........................................................................7, 13

*Pansy v. Borough of Stroudsburg*,
    23 F.3d 772 (3d Cir. 1994)............................................................................7, 19

*Pearson v. Miller*,
    211 F.3d 57 (3d Cir. 2000)...................................................................................7

*Pfizer Inc. v. Teva Pharms. USA, Inc.*,
    461 F. Supp. 2d 271 (D.N.J. 2006) ...................................................................18

*Richards v. Convergys Corp.*,
    2:05-CV-00790, 2007 U.S. Dist. LEXIS 9131 (D. Utah Feb. 6, 2007)...................12

*Robotic Parking Sys.*,
    06-3419, 2010 U.S. Dist. LEXIS 4575, 2010 WL 324524 ......................................7

*Ruiz v. Morris County Sheriff's Dep't*,
    Civ. No. 05-1825, 2008 U.S. Dist. LEXIS 41661 (D.N.J. May 28, 2008) .......11, 14

*Schmulovich v. 1161 Rt. 9 LLC*,
    07-597, 2007 U.S. Dist. LEXIS 59705 (D.N.J. Aug. 13, 2007) ..............................6

*Stamy v. Packer*,
    138 F.R.D. 412 (D.N.J. 1990).............................................................................12

*Tele-Radio Sys. Ltd. v. De Forest Elec.*,
    92 F.R.D. at 375 (D.N.J. 1981)............................................................................7

*Walker v. Northwest Airlines Corp.*,
    No. Civ. 00-2604, 2002 U.S. Dist. LEXIS 27592, 2002 WL 32539635 (D. Minn. Oct.
    28, 2002) ...........................................................................................................15

*Yansick v. Temple Univ. Health Sys.*,
    297 Fed. Appx. 111 (3d Cir. 2008) ....................................................................15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 ................................................................................................2, 3, 4

Fed. R. Civ. P. 26(b)(1) ...........................................................................................6, 7

Fed. R. Civ. P. 26(c)(1) ..............................................................................................7

FRE 403 and 404 .......................................................................................................17

*L. Civ. R.* 5.3 .............................................................................................................21

*L. Civ. R.* 5.3(c)(1) ...................................................................................................20

*L. Civ. R.* 5.3(c)(1)-(2) .............................................................................................20

*L. Civ. R.* 5.3(c)(2) ...................................................................................................21

*L. Civ. R.* 7.2 (a) ......................................................................................................11

*L. Civ. R.* 37.1 ...........................................................................................................6

*L. Civ. R.* 37.1(a)(1) ..................................................................................................6

*L. Civ. R.* 37.1(b)(1) ..................................................................................................6

Defendant Nalco Company ("Nalco") submits this memorandum of law in opposition to Plaintiff David Berridge's ("Berridge") Motion for a protective order and to eliminate or seal evidence (the "Motion").

<u>PRELIMINARY STATEMENT</u>

In this single plaintiff employment case, Berridge seeks to bar his former employer, Nalco, from obtaining and relying upon discovery that is relevant to two critical issues:  his alleged damages and whether Nalco terminated his employment for unlawful reasons or because of his performance.  Namely, he seeks a protective order barring Nalco from obtaining discovery on these two issues from his current employer and certain prospective employers – should he separate from his current employer.  And he seeks a motion *in limine* and a motion to seal this discovery, and the discovery Nalco received from the State New Jersey, Department of Labor and Workforce Development ("DOL") pursuant to an Order of this Court.  In making these applications, Berridge relies upon two false premises: that a former employer is not entitled to receive directly from a plaintiff's prospective or current employer, or government agency, information concerning his wages, benefits, job performance, and job applications, as such discovery is irrelevant, prejudicial and *may* jeopardize his current or future employment prospects; and that the admissibility of this evidence should be determined at this early stage of discovery, before the plaintiff has been deposed and before some of the discovery in question has even been produced.  Unsurprisingly, Berridge offers no germane authority precluding this discovery.

As an initial matter, the Court should disregard Berridge's Motion to the extent it seeks relief beyond a protective order barring Nalco from obtaining discovery from his current employer, as the Motion's scope goes far beyond what the Court granted Berridge leave to file in its April 12, 2011 Order.  Indeed, Berridge admits as much in his Motion.

In addition to disregarding the Court's April 12, 2011 Order, Berridge's Motion disregards the wealth of cases holding that the discovery at issue is discoverable and relevant, including the specific case that Nalco cited in its April 5, 2011 letter to the Court and during the April 11, 2011 telephonic conference call with the court: *Hite v. Peters*, No. 07-4492, 2009 U.S. Dist. LEXIS 51894 (D.N.J. June 19, 2009). Rather than address *Hite* or cite any other relevant legal precedent, Berridge improperly relies on pure conjecture and rank speculation concerning what *might* happen should Nalco be allowed to obtain the at-issue information. Berridge's motion further confuses the standard for discoverability of evidence under Fed. R. Civ. P. 26 as compared to the standard for admissibility of evidence at trial under the Federal Rules of Evidence. As such, Berridge highly overestimates the standard of relevancy for purposes of discovery in the employment litigation context at this procedural posture.

Conversely, as the litany of cases that Nalco cite demonstrate, the evidence Nalco seeks is relevant to Berridge's efforts at mitigation, credibility, damages, and the after-acquired evidence doctrine. This discovery is accordingly directly relevant, or, at the very least, reasonably calculated to lead to the discovery of admissible evidence, and Berridge's motion should therefore be denied.

<u>STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY</u>

Nalco hired Berridge as a Senior Account Manager, Refinery and Fuels Management in or around November of 2006.  (Am. Comp.[1] ¶¶ 1, 3 & 29).  On or about January 29, 2010, Berridge's employment with Nalco was terminated based on legitimate, non-discriminatory business reasons: poor performance, including failing to meet his sales goals.

Berridge alleges several causes of action in his Amended Complaint concerning his employment and ultimate termination by Nalco: that upon returning from approved Family Medical Leave Act ("FMLA") Leave, he was not restored to his original or an equivalent job (*Id.* ¶ 41); that Nalco retaliated against him for exercising his FMLA rights, including terminating his employment (*Id.* ¶¶ 64, 68, 93); and that Nalco violated the duty of good faith and fair dealing (*Id.* ¶¶ 97-118) and defamed him (*Id.* ¶¶ 119-135).  Berridge also alleges that he has suffered a multitude of damages due to Nalco's conduct, including emotional distress-related, and lost wages and benefits.  (*Id.* ¶¶ 96, 118, 135).

During discovery, Nalco requested that Berridge sign authorizations allowing Nalco to obtain his employment records from his current employer, Rochester Midland Corporation ("Rochester"), and the seven (7) prospective employers that Berridge identified in his interrogatory responses as those to which he submitted his employment application following his employment with Nalco.  On or about March 21, 2011, Berridge's counsel sent Nalco's counsel signed authorizations for the release of Berridge's employment records, but purposely did not have Berridge's signatures notarized.  (Berridge Aff.[2] Ex. B).  Rather, Berridge's counsel

---

[1] Berridge's August 3, 2010 First Amended Complaint (Docket No. 6) ("Am. Comp."), Ex. A to the June 5, 2011 Certification of Douglas B. Lipsky ("Lipsky Cert.").

[2] David Berridge's May 13, 2011 Affidavit ("Berridge Aff."), Docket No. 26-1.

3

explained that Berridge's signature on the authorizations was not "a voluntary act" and that "if he [Berridge] loses his job for your submission of these authorizations, then, the increased damages were specifically caused by your client's direct inquiry of the Employer." *Id.*

Nalco also sought Berridge's records from the DOL during discovery.  To that end, on February 23, 2011, Nalco provided Berridge's counsel with a proposed order for her to review and to provide any comments, which would compel the DOL to produce certain records. (February 23, 2011 to March 7, 2011 email exchange, Lipsky Cert. Ex. E).  Critically, neither in the email exchanges between counsel nor in the proposed order was there any discussion about the temporal limitation of the order.  (*Id.*).  On March 4, Berridge's counsel unequivocally stated that she has "no objections to the proposed order."  (*Id.*).  Nalco's counsel accordingly provided the Court with the mutually agreed to and signed proposed order for its consideration and signature, which the Court signed and entered on March 14, 2011 (*Id.*).  Nalco then submitted the Court's Order to the DOL, who subsequently provided Nalco with "a true and accurate representation" of its records concerning Berridge by letter dated April 11, 2011.  (Berridge Aff. Ex. G).  In the documentation the DOL provided, it states that Betz Dearborn Inc. employed Berridge "from January, 1996, until 1/31/05, when he was suspended without pay.  The claimant was suspended because he failed a drug test."  (Berridge Aff. Ex. G at NJDOL0003).  Nalco provided Berridge with these records by letter dated April 21, 2011.  (*Id.*).

In between the Court entering its March 14, 2011 Order and Nalco producing to Berridge the DOL records, on March 24, 2011, Berridge counsel's submitted her letter to the Court, seeking the Court's intervention to prevent Nalco from subpoenaing Berridge's employment records form his current employer, Rochester.  (March 24, 2011 Letter, Lipsky Cert. Ex. B). Because that letter addressed no other discovery issue, this was the sole discovery issue raised in

Nalco counsel's April 5, 2011 letter to the Court[3] and the sole discovery issue discussed during the April 12, 2011 telephonic conference with the Court.  Accordingly, the Court's April 12, 2011 Order granted Berridge leave to file a "a Motion for a Protective Order relating to his current employment" – nothing more (April 12, 2011 Order, Lipsky Cert. Ex. F).  Despite the limited scope of the Court's April 12, 2011 Order, Berridge filed the instant motion seeking relief beyond what the Court permitted.

<u>LEGAL ARGUMENT</u>

I.     To The Extent Berridge's Motion Goes Beyond What the Court Granted Him Leave to File, Those Parts of His Motion Should Be Disregarded.

The Court's April 12, 2011 Order is clear and unequivocal: "On or before May 20, 2011, plaintiff shall file a Motion for Protective Order relating to his <u>current employment</u>." (Lipsky Cert. Ex. F).  Despite this limited scope, Berridge seeks a protective order, a motion *in limine* and a motion to seal the records the DOL produced and discovery regarding job applications he submitted following his separation from Nalco to seven (7) potential employers.  No doubt exists Berridge's Motion goes beyond what the Court permitted.  Indeed, Berridge admits as much in his Motion:

> When these parties conferred with the Court via telephonic conference it was recommended that a Protective Order Application be made by the Plaintiff's Counsel.  We are now persuaded that this is not sufficient protection for the Plaintiff, David Berridge.

---

[3] The letters also concerned two issues that are not relevant to this application:  Berridge objecting to the *pro hac vice* application of Mark Lies and Berridge demanding that Nalco obtain local counsel.  The Court granted the *pro hac vice* application (Docket No. 25) and denied Berridge's demand for local counsel.

Berridge MOL[4] at 7.

Prior to *sua sponte* deciding to include these two (2) additional categories of documents in his motion, Berridge failed to satisfy two of his obligations under *L. Civ. R.* 37.1:  he did not meet and confer with Nalco on these issues; and he did not present these issues "by telephone conference call or letter to the Magistrate Judge."  *See L. Civ. R.* 37.1(a)(1); Lipsky Cert. ¶ 2. The Local Rules of this Court are explicit in this regard:  "This presentation shall precede any formal motion."  *Id.*  Unsurprisingly, Berridge's Motion fails to provide the required affidavit certifying the date and method that Berridge raised these issues with Nalco.  *See L. Civ. R.* 37.1(b)(1).  Berridge's Affidavit does, however, state "My attorney advises that the parties had a telephonic conference with the Court for the filing of this application."  (Berridge Aff. ¶ 1). Again, that conference was limited only to a protective order barring Nalco from obtaining discovery from his current employer – nothing more.  Accordingly, to the extent Berridge's Motion seeks any relief beyond a protective order barring Nalco from contacting his current employer, this Court should disregard it.

II.    Berridge Puts Forth No Cognizable Legal Argument Or Competent Evidence To Warrant a Protective Order to Bar Nalco From Obtaining Relevant Discovery From His Current Employer, and His Likely Prospective Employers *Should* He Decide to Separate From His Current Employer

It is well-settled that discovery is purposefully broad under federal law.  *See* Fed. R. Civ. P. 26(b)(1); *Schmulovich v. 1161 Rt. 9 LLC*, 07-597, 2007 U.S. Dist. LEXIS 59705 (D.N.J. Aug. 13, 2007).  Consistent with this maxim, parties may generally "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.] . . ." and courts may order

---

[4] Plaintiff David Berridge's May 19, 2011 Memorandum of Law In Support of His Motion for a Protective Order and to Eliminate Evidence or Seal (Docket No. 26) ("Berridge MOL").

for "good cause" discovery of matters that are "relevant to the subject matter involved in the action."  Fed. R. Civ. P. 26(b)(1).  Critically, "relevant information <u>need not be admissible at the trial</u> if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  *Id* (emphasis added)*; see also Graco, Inc. v. PMC Global, Inc.,* 08-1304*,* 2011 U.S. Dist. LEXIS 30980 (D.N.J. Mar. 24, 2011) (citing *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990) ("[I]t is important to distinguish the right to obtain information by discovery from the right to use it at trial.")).

If a party contends the requested discovery is running afoul of this broad discovery scope, it may apply for a protective order.  This burden is not easily met.  Rather, the moving party must show that a protective order is necessary to protect a party or person from "annoyance, embarrassment, oppression or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  To do so, the party resisting discovery "has the burden of clarifying, explaining and supporting its objections."  *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000) (*citing Tele-Radio Sys. Ltd. v. De Forest Elec.*, 92 F.R.D. at 375 (D.N.J. 1981)).  The party requesting the protective order must accordingly demonstrate "that disclosure will work a clearly defined and serious injury" and must substantiate the alleged injury, with "<u>specific examples</u> and reasons, as <u>broad allegations of harm do not support a showing of good cause</u>."  *Robotic Parking Sys.*, 06-3419, 2010 U.S. Dist. LEXIS 4575, 2010 WL 324524, at *4 (emphases added); *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) (to warrant a protective order, the requesting party must establish "with specificity" "that disclosure will work a clearly defined and serious injury to the party seeking closure"); *see also Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) ("In determining whether there is good cause, courts will balance the party's need for the

information against the resulting injury of disclosure.").  At each turn, Berridge fails to meet this

necessary standard.

    A.    To Ensure that Nalco Has Obtained All of the Necessary, Relevant Discovery
           Regarding Berridge's Current Employment, Nalco Is Entitled to Receive This
           Information Directly From His Current Employer and Berridge's Motion for a
           <u>Protective Order to Bar Nalco From Doing So Should Accordingly Be Denied.</u>

Berridge argues that Nalco should be prohibited from obtaining discovery directly from

his current employer, Rochester, on the relevant issues of his duty to mitigate and the reasons

Nalco terminated his employment, as he has already provided Nalco with some of this discovery,

and such discovery practices by Nalco *might* jeopardize his current position and are designed

solely to harass and intimidate him.  In making this application, Berridge disregards the well-

accepted relevancy of this discovery, puts forth no competent evidence as to what harm *might*

result if the discovery proceeds, offers no alternative, reliable method to produce the necessary

discovery, and conflates the governing legal standard.

    1.    Nalco Has A Substantial Need For The Requested Discovery, As It Is
           <u>Particularly Relevant to Critical Issues.</u>

As an initial matter, Berridge's motion noticeably ignores the cases holding that the

discovery at issue is relevant, including the very case Nalco cited in its April 5, 2011 letter to the

Court (Lipsky Cert. Ex. C) and during the April 12, 2011 Court telephonic conference that

addresses the very issue Berridge's motion raises:  *Hite v. Peters*, No. 07-4492, 2009 U.S. Dist.

LEXIS 51894 (D.N.J. June 19, 2009).  In *Hite*, much like here, the plaintiff alleged that his

former employer unlawfully terminated his employment and sought a protective order precluding

the defendant from obtaining by way of subpoena the employment records of his subsequent

employer.  The *Hite* plaintiff argued that the subpoena was unnecessary to the proceeding as the

information was irrelevant, or alternatively, the information that he already directly provided to

the defendant was sufficient.  *Id.* at * 6.  This Court denied plaintiff's motion, reasoning that a

defendant in an employment case is entitled to this information because of plaintiff's duty to mitigate damages as well as to potentially provide evidence supporting defendant's stated reasons for terminating plaintiff's employment.

Critically, *Hite* is not the only case to have concluded records from a plaintiff's current employer are relevant to issues of mitigation, damages and the stated reason for the defendant's actions, and correspondingly to have rejected arguments akin to Berridge's. *See, e.g., Behrens v. Rutgers Univ.*, Civ. No. 94-358, 1995 U.S. Dist. LEXIS 22030 (D.N.J. Aug. 9, 1995) ("It is clear that the post-Rutgers employment records of Plaintiff Behrens are relevant documents which bear upon his claim for damages, and so were required to be provided pursuant to Rule 26(a)."); *Gragossian v. Cardinal Health, Inc.*, 07CV1818, 2008 U.S. Dist. LEXIS 55680 (S.D. Cal. July 21, 2008) ("records reflecting . . . prior employment experiences, including . . . wages, benefits, duties, attendance records, performance evaluations and records of disciplinary action . . . is directly relevant to the issue of plaintiff's current and future earning potential and an analysis as to what kind of employment plaintiff might obtain in an effort to mitigate her damages" and therefore discoverable); *E.E.O.C. v. Woodmen of the World Life Ins. Soc'y*, No. 8:03 CV 15, 2007 WL 64298, at *5 (D. Neb. Feb. 1, 2007) (holding that records from plaintiff's subsequent employers "reasonably bear on the defendant's stated reason for [plaintiff's] demotion and is reasonably calculated to lead to admissible evidence").

The potential relevancy of this information is not a mere hypothetical. Rather, the limited documents that Berridge has produced from Rochester already confirm their relevancy and the need for more, as these documents show that both Rochester <u>and</u> Nalco identified Berridge as having similar performance issues:  his need to better develop new clients and that his overall sales performance needs improvement. (Berridge Aff. Ex. E).  As this information would likely

9

rebut any notion of discriminatory or retaliatory animus, Nalco should accordingly be permitted to fully investigate Berridge's current employment.

      2.      Berridge Offers No Reliable, Alternative Method to Produce This Discovery.

Instead of confronting the well-accepted relevancy of this discovery, Berridge argues that Nalco should be prohibited from obtaining this discovery directly from Rochester because he has already provided Nalco with the information Nalco seeks.  (Berridge MOL at 6; Berridge Aff. ¶¶ 4-6).  While Berridge has directly provided Nalco with *some* information concerning his compensation from Rochester and one "Employee Performance Appraisal" dated March 11, 2011, this is insufficient.  Nalco is entitled to receive this information, as well as all additional information concerning his job performance, job responsibilities, resume, employment application, wages, and benefits directly from Rochester to ensure that Nalco is provided with Berridge's entire personnel file – not merely the documents Berridge may obtain from Rochester and those he decides to provide his counsel.  *See Hite,* at *13 (defendant entitled to subpoena employment records directly from plaintiff's former employer since "…while Plaintiff has provided W-2s, 1099s, and a declaration to demonstrate his post-termination employment income, the Court rejects the argument that these documents preclude defendant from seeking employment records by way of subpoena.").  Furthermore, considering that the State of New Jersey has no law guaranteeing employees access to their personnel files, the only way to ensure Nalco is provided with Berridge's entire personnel file is for Nalco to obtain this information directly from Rochester through a subpoena or court order.  *Id.*  That is, because Berridge has no legal right to access his personnel file with Rochester, he cannot know the full content of his personnel file and therefore cannot affirm that he has produced to Nalco his entire file.  It is

therefore necessary that Nalco be permitted to subpoena these records or that a court order be issued.

        3.      Berridge Fails to Satisfy His Required Burden of Proof That the Requested Discovery Will Work A Clearly Defined, Serious Injury or Is Designed to Harass Him, Warranting a Protective Order.

Berridge next argues that a protective order is warranted because the requested discovery *might* jeopardize his current employment with Rochester.  (Berridge MOL at 2, 5, 6).  To support this position, Berridge relies solely on his own affidavit[5], in which he contends that should a protective order not be issued and Nalco be permitted to subpoena records from Rochester, his employment *might* be compromised and Rochester may "terminate me upon learning of this lawsuit."  (Berridge Aff. ¶¶ 9, 10, 12).  As these statements focus on how *Rochester* may perceive any such subpoena, these statements are rank speculation and conjecture, and should accordingly be stricken from his Affidavit and disregarded for purposes of this motion.  *See L. Civ. R.* 7.2 (a) ("Affidavits shall be restricted to statements of fact within the personal knowledge of the affiant.  Argument of the facts and the law shall not be contained in affidavits.  Legal arguments and summations in affidavits will be disregarded by the Court and may subject the affiant to appropriate censure, sanctions or both"); *Ruiz v. Morris County Sheriff's Dep't*, Civ. No. 05-1825, 2008 U.S. Dist. LEXIS 41661 (D.N.J. May 28, 2008) (disregarding self-serving conclusions based upon speculation or beliefs contained in plaintiff's certification pursuant to Local Rule 7.2(a)); *Cohen v. Kurtzman*, 45 F. Supp. 2d 423 (D.N.J. 1999) (same).

---

[5] Because Berridge's Memorandum of Law does not cite to any specific paragraphs of his Affidavit, Nalco has identified the paragraphs that appear relevant to each argument Berridge advances.

Even if the Court considers Berridge's conjecture as to what *might* occur if Nalco subpoenas his records from Rochester, he still falls short of his burden of proof to provide specific reasons as to why a protective order is warranted.  Rather, Berridge relies solely on broad allegations of potential harm that courts have repeatedly found not to constitute good cause necessary for the issuance of a protective order.  *FTC v. Dutchman Enters., LLC*, 2:09-cv-141, 2010 U.S. Dist. LEXIS 78118 (D.N.J. Aug. 2, 2010) (denying motion for protective order since broad statements that reputation may be harmed without the issuance of a protective order was unsubstantiated by any "specific examples or articulated reasoning");  S*tamy v. Packer*, 138 F.R.D. 412 (D.N.J. 1990) (to warrant issuance of a protective order, party must demonstrate that "the harm must be significant…");  *Richards v. Convergys Corp.*, 2:05-CV-00790-DAK, 2007 U.S. Dist. LEXIS 9131 (D. Utah Feb. 6, 2007) ("Although the court in this case acknowledges that seeking discovery from a current employer is a more sensitive issue than seeking it from a former employer, the court declines to deny discovery from Richards' present employer on the ground that it will subject her to "annoyance, embarrassment, oppression or undue burden.").

In addition to these cases confirming that Berridge has not met his burden of proof to warrant a protective order, by holding the requested discovery is relevant and often obtained directly from the current employer, they also reject another argument Berridge advances:  that Nalco's discovery practices are "extremely aggressive" and designed to harass and intimidate Berridge.  To be sure, Nalco attempted to obtain this information in the least intrusive means to address Berridge's concerns: first requesting that Berridge authorize the release of these records.  The subpoena and likely Court order only became necessary when Berridge refused to prove Nalco with the signed and notarized authorizations.  Accordingly, contrary to Berridge's hyperbole, this type of discovery is a foreseeable consequence for initiating a lawsuit that puts

12

his past and current employment status squarely at issue, and reflects standard discovery

practices in employment litigation.  *Hite, supra* at * 13.

        4.     Berridge Conflates The Governing Legal Standard For The Issuance of a
             Protective Order

Berridge further argues that a protective order should issue because, under the Federal

Rules of Evidence ("FRE") 401 and 403, no probative value exists to his current employment

records, and even if there is, "there are definite alternatives to receive the evidence, direct from

Berridge, pertaining to all his efforts to mitigate his damages."  (Berridge MOL at 6).

Preliminarily, Berridge's argument concerning the probative value of evidence from his current

employer is premature as such analysis occurs at or immediately before trial.  In fact, the very

cases Berridge cites in support of this argument dealt with *in limine* rulings immediately prior to

trial, not during discovery.  *See, e.g., In re Nautilus Motor Tanker Co.*, 85 F.3d 105, 109 (3d Cir.

1996) (" . . . we are asked to determine whether the district court erred in <u>admitting</u> opinions and

conclusions contained in a Coast Guard Report of the incident <u>into evidence</u>.") (Berridge MOL

at 5); *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983) *rev'd on*

*other grounds, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ("we

agree completely with those commentators who urge that *in limine* ruling on evidence issues is a

procedure which should, <u>in a trial court's discretion</u>, be used in appropriate cases.") (emphasis

added) (Berridge MOL at 6).  Accordingly, Berridge's argument concerning admissibility under

the FRE should be ignored, as the parties are still in discovery.  *See, Nestle Foods Corp. v.*

*Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990) ("[I]t is important to distinguish the

right to obtain information by discovery from the right to use it at trial.")).  Furthermore, as the

case law above demonstrates, including *Hite*, it is beyond reproach that records from Berridge's

current employer is probative and would be admissible at trial as such evidence is relevant to

both Berridge's claims and Nalco's defenses as well as Berridge's obligation to mitigate his damages.

At bottom, Berridge offers no competent argument as to why a protective order should be issued barring Nalco from subpoenaing relevant discovery directly from Berridge's current employer.

> B.   A Protective Order Should Not Issue Barring Nalco From Obtaining Discovery Directly From The Seven (7) Prospective Employers Berridge Submitted Resumes To, As Such Information Is Relevant To His Mitigation Of <u>Damages And Constitutes After-Acquired Evidence</u>

Berridge also seeks a protective order to bar Nalco from obtaining information directly from the seven (7) prospective employers to which he submitted employment applications following his employment with Nalco, as these companies never interviewed him or paid him, and that such discovery *might* jeopardize his chances of these companies employing him in the future.  (Berridge Aff. ¶ 24; Berridge MOL at 4, 6).  This argument fails at inception.

Consistent with the rest of his Motion, Berridge's arguments that Nalco should be prevented from obtaining discovery from these seven (7) prospective employers is based solely on rank speculation and his misguided belief as to what information is discoverable in the employment litigation context.  Namely, Berridge argues that, *if* he separates from his current employer, he *might* apply to one or more of these companies, *assuming* these companies are hiring at the time, and that these companies *might* base their decision not to hire him on the fact he initiated this litigation.  (Berridge Aff. ¶ 8; Berridge MOL at 4).

As an initial matter, these statements go beyond statements of facts within Berridge's personal knowledge, and they should accordingly be stricken and disregarded.  *See, L. Civ. R.* 7.2 (a); *Ruiz v. Morris County Sheriff's Dep't*, Civ. No. 05-1825, 2008 U.S. Dist. LEXIS 41661 (D.N.J. May 28, 2008).  Moreover, these speculative statements fail to meet the requisite

14

standard to issue a protective order.  *See, Cipollone*, 785, F.2d at 1121, *supra* (explaining

protective orders require a showing of specific examples of a clearly defined injury).  Indeed, the

U.S. Court of Appeals for the Third Circuit held as much.  *See, Yansick v. Temple Univ. Health*

*Sys.*, 297 Fed. Appx. 111 (3d Cir. 2008) ("In particular, his vague and speculative allegations

about a prospective employer finding out about his litigation . . . are insufficient to demonstrate

the requisite injury and otherwise fail to show that the balance of relevant interests weigh in

favor of confidentiality").

   In addition to impermissibly relying on pure speculation and conjecture, Berridge ignores

that the relevancy of these records extend beyond his duty to mitigate his damages, but also

include how these seven (7) prospective employers assessed Berridge as a candidate, and the

reasons he gave to these entities about his separation of employment from Nalco.  *Hite*, 2009

U.S. Dist. LEXIS 51894 at *12 (citing *Walker v. Northwest Airlines Corp.*, No. Civ. 00-2604,

2002 U.S. Dist. LEXIS 27592, 2002 WL 32539635, at *2 (D. Minn. Oct. 28, 2002) (resumes and

job applications, while may not be admissible at trial . . . are "reasonably calculated to lead to

admissible evidence" and therefore discoverable)).  This information is particularly relevant

here, considering the information that the DOL provided on Berridge's separation from Betz

Dearborn conflicts with the information he submitted with his application to Nalco regarding

Betz:  Berridge stated to Nalco that he left Betz to "try something new" (Lipsky Cert. Ex. G), the

DOL records state Betz suspended him for failing a drug test (Berridge Aff. Ex. G).  Given

Berridge's apparent misrepresentation to Nalco at the onset of his employment, it is reasonably

foreseeable that he made similar misrepresentations to these prospective employers and Nalco is

entitled to obtain records to investigate.

Additionally, this information – as Berridge admits – is relevant to his duty to mitigate. Berridge, however, theorizes that because this is his burden of proof, that Nalco should be foreclosed from investigating whether he met this duty.  Tellingly, Berridge cites no supporting authority.

Accordingly, Berridge has not met his burden of proof to establish that a protective order is warranted preventing Nalco from obtaining records from these seven (7) prospective employers.

III.    As the Information that the DOL Produced Is Relevant As After-Acquired Evidence and this Matter Is Only In the Early Stages of Discovery, Berridge's Apparent Motion *In Limine* or Motion for a Protective Order to Eliminate/Suppress/Seal the Information Should Be Denied

Berridge further seeks an order to suppress, eliminate or seal information the DOL produced pursuant to this Court's March 14, 2011 Order because it contains "erroneous and false information" that was "produced under false pretenses" and has "no nexus of facts pertaining to Mr. Berridge's termination from Nalco."  (Berridge Aff. ¶15; Berridge MOL at 8).  In making this argument, Berridge ignores the surrounding circumstances of the Order and ignores the governing standard.

Preliminarily, contrary to Berridge's contention, the information the DOL provided Nalco was not "obtained under false presentences." (Berridge MOL at 8).  Rather, Nalco's counsel provided Berridge's counsel with the proposed order for her to review and provide comments. (February 23, 2011 to March 7, 2011 Email exchange, Lipsky Cert. Ex. E).  During which – at no time – did Nalco's counsel state that the proposed order would be limited to the records following Berridge's employment with Nalco, and the proposed order likewise contained no limiting language.  (*Id.*)  Critically, Berridge's counsel never once questioned the content or scope of the order, but instead categorically stated that she has "no objections to the proposed

16

order" and permitted Nalco's counsel to e-sign the proposed order on her behalf. (*Id.*). After which, Nalco submitted the proposed order to the Court for its consideration and signature, and then provided the DOL with the Court's signed Order. Nalco in no way misrepresented the information that it was seeking. If Berridge's counsel had questions about the Order, she had ample opportunity to do so, but never did. Nalco should not be faulted for Berridge's counsel failure to act.

Turning to the relevancy of this information, to defend against Berridge's claims, Nalco is entitled to discover the existence of any after-acquired evidence of misrepresentations Berridge made to it regarding his job experience or reasons for leaving prior employment, as this information is directly relevant for purposes of limiting the potential relief to which Berridge may be entitled. *Mardell v. Harleysville Life Ins. Co.*, 65 F.3d 1072, 1073-74 (3d Cir. 1995) (after-acquired evidence could play a role in evaluating the available remedies to which a plaintiff would be entitled); *Miller v. Beneficial Management Corp.*, 855 F. Supp. 691, 716-17 (D.N.J. 1994) (after acquired evidence may limit back pay); *Massey v. Trump's Castle Hotel & Casino*, 828 F. Supp. 314, 322 (D.N.J. 1993) ("acquired evidence … may preclude the award of front-pay and reinstatement…" since "… to require employers to reinstate or provide front-pay to an employee today that they can now fire legitimately tomorrow would be nonsensical."). Thus, prior and subsequent employment records, including the at-issue records the DOL produced pursuant to this Court's Order are discoverable for this purpose.

Faced with the consequences of this information, Berridge argues that this information should be eliminated/suppressed/sealed because it is potentially more misleading than probative and constitutes inadmissible character evidence under FRE 403 and 404. This argument is misplaced. Nalco does not seek to use this information, as Berridge alleges "to prove that he is a

person of bad character and likely to therefore have committed some crime or which he is accused in a case, or, for some other undetected crime, for which he should be punished." (Berridge MOL at 8-9).  Rather, the information the DOL produced is relevant as after-acquired evidence as it shows he withheld or otherwise misrepresented information to Nalco as to why he separated from his former employer, Betz Dearborn (Lipsky Cert. Ex. C), and because Nalco has a strict anti-drug policy (Lipsky Cert. Ex. D).  Furthermore, at this early stage in discovery, it is premature to state that this evidence will confuse a jury.  In fact, should Berridge have an explanation for these records, as he apparently does based on his Affidavit, he can attempt to clarify these issues during his deposition or at trial.  But Nalco should be permitted to utilize these documents to challenge the credibility of his position, whether through his deposition or by obtaining additional discovery as to why he was suspended from Betz.

Unsurprisingly, Berridge does not address the relevancy of this information.  Instead, he asks the Court to exclude the DOL records from evidence at trial as it might be confusing to a jury – despite that this matter is only in the early stages of discovery.  (Berridge MOL at 6).  But even the cases Berridge relies upon confirm that his motion is premature.  *See e.g. Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069-70 (3d Cir. 1990) ("A jury was selected that morning and the district court heard argument in the afternoon on defendants' motions in limine. ");  *Pfizer Inc. v. Teva Pharms. USA, Inc.*, 461 F. Supp. 2d 271, 273 (D.N.J. 2006) ("Before the Court is Pfizer 's motion *in limine* No. 2 to preclude the testimony of several of Teva's expert witnesses.");  *Lanni v. New Jersey*, 177 F.R.D. 295, 298-307 (D.N.J. 1998) (plaintiff former employee and defendants, former employers, filed motions *in limine* to preclude trial testimony in the former employee's suit alleging disability discrimination) (Berridge MOL at 10).  And his reliance upon *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157 (3d Cir.

18

1993) is misguided in the least.  (Berridge MOL at 10).  In *Leucadia*, a non-party to the

underlying litigation intervened after the case was settled to obtain access to documents that had

been filed under seal during pretrial discovery.  *Id.*  The Third Circuit held that under the

common law there was a presumptive public access to documents filed in the court relating to

non-discovery pretrial motions and that the district court erred in entering the umbrella protective

order and not requiring the parties to demonstrate a particularized need for continued

enforcement of the protective order rather than placing the burden on the intervenor.  *Id.* at 165.

The Third Circuit remanded the matter back to the district court to review the documents under

seal to determine whether any document or portion thereof required protection from disclosure.

*Id.* at 167.  Accordingly, an even cursory review of the facts of *Leucadia* demonstrate that it has

no applicability to Berridge's pending motion whatsoever.  While Berridge is correct that a

protective order is "an available remedy," he has failed to allege any facts sufficient to warrant

the imposition of one concerning the DOL records.

IV.     Berridge's Motion to Seal Discovery Obtained From the DOL and Likely to Be Obtained
        From Berridge's Potential Prospective Employers Is Procedurally and Substantively
        Flawed.

        Without any substantive argument or analysis, Berridge apparently moves to seal from

public disclosure information that the DOL produced (Berridge MOL at 2) and any future

deposition testimony regarding his employment applications to certain prospective employers

(*Id.* at 7).  This motion is procedurally and substantively flawed.

        The party bringing a motion to seal has the burden of showing that the interest in secrecy

outweighs the presumption of access.  *Leucadia, Inc.*, 998 F.2d at 164.  Therefore, for this

evidence to be sealed, Berridge must establish "good cause" and that "a showing that disclosure

will work a clearly defined and serious injury to the party seeking closure."  *Pansy v. Borough of

Stroudsburg*, 23 F.3d 772 (3d Cir. 1994);  *Clark v. Prudential Ins. Co. of Am.*, Civ. No. 08-6197,

19

2011 U.S. Dist. LEXIS 51486 (D.N.J. May 13, 2011) ("Under the Federal Rules, confidentiality restrictions are not granted as a matter of course.  Rather, 'a party wishing to obtain an order of protection over discovery material must demonstrate that 'good cause' exists for the order of protection.'").  Mere allegations of harm are insufficient; to meet this burden, the party must give "specific examples or articulated reasoning" demonstrating the harm that would result.  *Faulman v. Sec. Mut. Fin. Life Ins. Co.*, Civil No. 04-5083, 2006 U.S. Dist. LEXIS 35875 (D.N.J. May 31, 2006).  Additionally, the Local Rules of this Court require that a party seeking to seal materials must file a formal motion under the designation of "motion to seal materials," and the motion much address four factors: (a) the nature of the materials . . . at issue, (b) the legitimate private or public interests which warrant the relief sought, (c) the clearly defined and serious injury that would result if the relief sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available.  *L. Civ. R.* 5.3(c)(1)-(2).  The Local Rules further require that any materials deemed confidential subject to a motion to seal should be separately filed under the designation of "confidential materials."  *Id.* at 5.3(c)(3).

Procedurally, this motion is fundamentally flawed.  Berridge did not file a separate motion that is appropriately designated a "motion to seal materials"; this motion is designated as one for a "protective order."  *See L. Civ. R.* 5.3(c)(1).  Berridge likewise did not separately file under the designation "confidential materials" the information Berridge wishes to seal.  *See id.* at 5.3(c)(3).  Rather, Berridge publicly filed the DOL records for anyone to access, which alone belies any notion that a legitimate privacy interests exists that warrants sealing these materials.  As to the likely deposition testimony on Berridge's prospective employers, any motion in that regard is not ripe: there is no such testimony.  It is likely for that reason that Berridge does not

set forth the "good cause" requiring this would-be testimony be sealed or address the four elements set forth in the Local Rules of this Court.

Berridge similarly does not establish "good cause" to seal the DOL records or how the four elements are satisfied.  In fact, he makes no attempt to articulate the privacy interests this information triggers, the potential harm it may cause him, or why a less restrictive alternative relief is not available.  *See L. Civ. R.* 5.3(c)(2).  At most, he argues that this information would potentially confuse a jury.  But that argument has no bearing on whether to seal discovery.  *See*, *Faulman*, *L. Civ. R.* 5.3.

Ultimately, Berridge presents no legitimate and supported argument as to why any discovery should be sealed.

<u>CONCLUSION</u>

For the reasons stated above, the Court should deny Berridge's Motion for a protective order, and to eliminate evidence or seal same.

Respectfully submitted,

SEYFARTH SHAW LLP


By___s/ Douglas Lipsky____
        Mark A. Lies II
        Douglas B. Lipsky
        Howard M. Wexler

        Attorneys for Defendant

Dated: June 6, 2011

21