**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

David Berridge,                                     :

            Plaintiff,            :        Hon. Joseph H. Rodriguez

       v.                            :        Civil Action No. 10-3219

Nalco Company,                                   :

          Defendant.         :        **Opinion**
_____


     This matter is before the Court on the parties' cross-motions for summary judgment. The Court heard oral argument on this matter on Wednesday, May 29, 2013.  On June 25, 2013, Plaintiff's Motion for Summary Judgment [Dkt. 59] was denied and Defendant's Motion for Summary Judgment [Dkt. 60] was granted in part.  See Dkt. No. 77.  The Court administratively terminated part of Defendant's motion that argued for summary judgment on Plaintiff's interference and retaliation claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2605.  The decision to administratively terminate Defendant's motion was made in response to Plaintiff's confusing opposition brief, which was replete with bald factual statements, contained intermittent record citations, and failed to use case law or argue under any relevant legal framework.

     Plaintiff was given the opportunity to file a supplemental opposition brief for the purpose of streamlining his arguments.[1]  The Court will address Defendant's motion.

---

[1] On July 9, 2013, Plaintiff submitted a thirty-two page document in opposition to the motion.  The new opposition brief only generally cites to relevant evidentiary support for most of the propositions.  In addition, italicized, bold, and underlined type-face, and the frequent use of exclamation marks, appear to highlight the facts that Plaintiff contends create a jury question.  While the submission constitutes an improvement, the

## I. Background

For the benefit of the reader, the Court will largely repeat the background section offered in its June 25, 2013 Memorandum Opinion. Plaintiff, Mr. David Berridge, has a background as a Certified Petroleum Engineer with experience in chemical sales in process and water treatment technologies. (Pl. Br. Mot. Summ. J. 2) From November 2006 until January 2010, Mr. Berridge worked as a Senior Account Manager for Nalco Company ("Nalco"), a company that provides "water, hygiene and energy technologies and services." In this capacity, Mr. Berridge oversaw Nalco's accounts with the Hess Port Reading, Chevron Perth Amboy, Salsol Baltimore and Petro facilities. (Def.'s Resp. Pl.'s S.F. 59-60.)

On December 11, 2008, Mr. Berridge gave notice of his need to take continuous leave under the Family and Medical Leave Act. (Pl.'s Mot. Summ. J., Ex. B, "Aetna Letter of 12/12/2008.") Mr. Berridge was entitled to take up to 12 weeks of unpaid leave in a 12 week period under the Family and Medical Leave Act, which Mr. Berridge could take intermittently or continuously, and after which he "must be reinstated to the same or an equivalent job with the same pay, benefits, and terms and conditions of employment." (Pl.'s Mot. Summ. J., Ex. A, "Aetna Letter of 12/30/2008.") Mr. Berridge was approved for and took FMLA leave from January 6, 2009 through January 25, 2009 and returned to work on January 26, 2009. (Pl.'s Mot. Summ. J., Ex. A, "Aetna Letter of 12/30/2008.")

---

Court continues to struggle with the nature of Plaintiff's arguments and the exact proofs offered in support thereof.

Mr. Berridge argues that when he returned from FMLA leave, he was not given "the same or equivalent job at the same terms and conditions." (Pl.'s Br. Summ. J. 6.) Rather, he was put on a "Performance Improvement Plan" ("PIP") with "impossible new requirements for increasing new business accounts in a 'down' economy." (Compl. 14.) Additionally, "[d]espite this PIP," Mr. Berridge was instructed to "train a much younger replacement, Josh Rockwell, to perform his own job." (Compl. 15.) Mr. Berridge asserts that his "original job was literally taken away, and, he was forced to train a much younger worker, unskilled, and very different than him by education and experience." (Compl. 45.)

In contrast, Nalco points out that upon his return from FMLA leave, Mr. Berridge enjoyed the same title, salary, benefits, expense account and automobile entitlement, and the only difference in Mr. Berridge's post-FMLA leave employment was that he was no longer on the Hess account. (Def.'s Mot. Summ. J., Ex. C, "Berridge Dep.," Tr. 418:06-420:10.) Nalco asserts that the only reason Mr. Berridge was removed from the Hess account was because Nelson Christian, Hess' Technical Service Manager, requested that he be replaced because of Mr. Berridge's poor performance. (Def.'s Br. Summ. J. 9-15.) Further, Nalco asserts that it made the decision to replace Mr. Berridge with Josh Rockwell prior to the commencement of Mr. Berridge's FMLA leave. (Def. Mot. Summ. J. 9.)

Throughout the extensive briefing in this matter, Mr. Berridge has alluded to several other causes of action in addition to those listed in the Amended Complaint, ranging from claims under the New Jersey Conscientious Employee Protection Act to claims under the New Jersey Law Against Discrimination. In an effort to streamline the case, the Court held oral argument in this matter on May 29, 2013, during which

Plaintiff acknowledged that his causes of action are those set forth in his Amended Complaint. In his Supplemental Brief in Opposition to the Summary Judgment motion, Plaintiff abandons his defamation claim. Thus, the only claims on which the Defendant seeks summary judgment, are as follows: (1) "interference" and (2) "retaliation" under the FMLA.

## II. Summary Judgment Standard

A court will grant a motion for summary judgment if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)); accord Fed. R. Civ. P. 56 (c). Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  <u>Id.</u>; <u>Maidenbaum v. Bally's Park Place, Inc.</u>, 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  <u>Andersen</u>, 477 U.S. at 256-57.  Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  <u>Celotex</u>, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 249.  Credibility determinations are the province of the finder of fact.  <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. The Family and Medical Leave Act

**A.**      <u>**Generally**</u>

The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, ("FMLA") was enacted to provide leave for workers whose personal or medical circumstances require that they take time off from work in excess of what their employers are willing or able to provide.  <u>Victorelli v. Shadyside Hosp.</u>, 128 F.3d 184, 186 (3d Cir. 1997) (citing 29 C.F.R.

§ 825.101). The Act is intended "to balance the demands of the workplace with the needs of families . . . by establishing a minimum labor standard for leave" that lets employees "take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse or parent who has a serious health condition." Churchill v. Star Enters., 183 F.3d 184, 192 (3d Cir. 1999) (quoting 29 U.S.C. § 2601(b)(1), (2)).

The FMLA guarantees eligible employees 12 weeks of leave in a one-year period following certain events: a serious medical condition; a family member's serious illness; the arrival of a new son or daughter; or certain exigencies arising out of a family member's service in the armed forces. 29 U.S.C. § 2612(a)(1). Leave must be granted, when "medically necessary," on an intermittent or part-time basis. § 2612(b)(1). Here, Berridge took approved leave to care for his new child; he was eligible for twelve weeks of continuous leave and he elected to take approximately three weeks of continuous leave for the care of his daughter, and a second leave of short duration for personal medical reasons.

Upon the employee's timely return, the employer must reinstate the employee to his or her former position or an equivalent. § 2614(a)(1). This is the crux of Plaintiff's claim: he was not restored to an equivalent position upon his return from FMLA leave because the terms of his employment were altered as outlined in a PIP. The Act makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of" these rights, § 2615(a)(1); to discriminate against those who exercise their rights under the Act, § 2615(a)(2); and to retaliate against those who file charges, give information, or testify in any inquiry related to an assertion of rights under the Act, § 2615(b).

**B.** **Interference**

An employer interferes with the exercise of an employee's right to unpaid leave if it fails to provide an employee, who gives notice of the need for leave, a written notice detailing the specific expectations and obligations of the employee and explaining any consequence of a failure to meet these obligations. See 29 U.S.C. § 2615(a)(1); Parker v. Hahnemann University Hosp., 234 F. Supp. 2d 478, 483 (D.N.J. 2002). Further, conduct discouraging employees from taking FMLA leave has been held to constitute interference, even if the employee ends up taking the leave. To succeed on an interference claim, the Third Circuit requires that a plaintiff demonstrate that the failure to advise him of his FMLA rights "rendered him unable to exercise that right in a meaningful way, thereby causing injury." Conoshenti v. Public Svc. Elec. & Gas Co., 364 F.3d 135, 143 (3d Cir. 2004) (citing 29 C.F.R. § 825.216(a)(1)).

"In order to assert a claim of interference, an employee must show that he was entitled to benefits under the FMLA and that his employer illegitimately prevented him from obtaining those benefits." Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 401 (3d Cir. 2007). Thus, to survive summary judgment on his interference claim, Plaintiff must present evidence establishing that: (1) he was entitled to FMLA benefits; (2) Nalco violated 29 U.S.C. § 2615 by "interfering with, restraining, or denying [his] exercise of FMLA rights;" and (3) he was prejudiced by the interference. Sconfienza v. Verizon Pennsylvania Inc., 307 Fed. App'x 619, 621 (3d Cir. 2008) (citing Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002)).

## C.    Retaliation

Pursuant to the FMLA, "[i]t [is] unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."  29 U.S.C. § 2615(a)(1).  It follows that the FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2) (1993).  But where an employee is discharged during a protected leave for a reason unrelated to the leave, there is no right to reinstatement.  Conoshenti, 364 F.3d at 141 (citing 29 C.F.R. § 825.216(a)(1)).

In cases alleging retaliation in the employment setting, courts generally apply the familiar burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Weston v. Pennsylvania, 251 F.3d 420, 432 (3d Cir. 2001).[2] The first step under McDonnell Douglas, is to establish a prima facie case of retaliation for requesting FMLA leave.  411 U.S. at 802.  To carry this initial burden in a retaliation

---

[2] As noted in the Court's first summary judgment opinion, the United States Court of Appeals for the Third Circuit notes that courts have applied the Price Waterhouse "mixed-motive" framework to "retaliation" claims based on direct evidence.  Lichtenstein v. University of Pittsburgh Medical Center, 691 F.3d 294, 302 (3d Cir. 2012) (citing Conoshenti , 364 F.3d at 147). In Lichtenstein, the Third Circuit noted that courts have questioned the viability of mixed-motive claims under the FMLA following the Supreme Court's decision in Gross v. FBL Financial Services, Inc., 557 U.S. 167, 129 S.Ct. 2343, 2349, 174 L.Ed.2d 119 (2009), however the Third Circuit declined to rule definitively whether mixed-motive claims may be sustained under the FMLA and instead applied the McDonnell Douglas burden-shifting analysis to the plaintiff's claim in that case.  See id. at 302.  Under the "mixed motive" framework established in Price Waterhouse v. Hopkins, 490 U.S. 228, 276-77, 109 S. Ct. 1775, 104 L.Ed. 2d 268 (1989) (O'Connor, J., concurring), "when a plaintiff alleging unlawful termination presents direct evidence that his FMLA leave was a substantial factor in the decision to fire him, the burden of persuasion on the issue of causation shifts, and the employer must prove that it would have fired the plaintiff even if it had not considered the FMLA leave." Conoshenti, 364 F.3d at 147 (internal citations omitted).  Plaintiff's Supplemental Brief indicates that he will rely on the McDonnell Douglas burden-shifting analysis. Pl. Supp. Op. Br. at 10.  However, several pages later, Plaintiff states that "Plaintiff asserts mixed claims of interference and retaliation." Id. at 12  Plaintiff then captions an argument as "(a) Mixed Case Burden" and then proceeds to argue under McDonnell Douglas.  The Court will apply the McDonnell Douglas framework to Plaintiff's claims.

case, a plaintiff must show that: (1) he engaged in protected activity (taking FMLA leave); (2) he suffered an adverse employment decision; and (3) the adverse decision was causally related to the leave. Conoshenti, 364 F.3d at 146-47. A causal connection may be established by circumstantial evidence, such as temporal proximity, a pattern of antagonism, and pretext. Kachmar v. SunGard Data Sys., 109 F.3d 173, 177 (3d Cir. 1997). This indirect evidence is to "be considered with a careful eye to the specific facts and circumstances encountered." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279, n. 5 (3d Cir. 2000).

Once a prima facie case is established, the burden of persuasion shifts back to the defendant to put forth "a legitimate, nondiscriminatory reason" for the employment decision. Id.; Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). If the defendant succeeds in demonstrating that the decision was based on a non-discriminatory reason, Plaintiff has the burden of proving by a preponderance of the evidence that the stated reason was pretextual. Burdine, 450 U.S. at 260; St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 508 (1993).

In evaluating employment cases, the task of the Court is not to second-guess employment decisions, but is instead to determine whether the employment decisions were motivated by an illegal discriminatory purpose. Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 525-27 (3d Cir. 1992). Thus, to establish pretext, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the . . . plaintiff must demonstrate such weakness, implausibilities, inconsistencies,

incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer' did not act for [the asserted] nondiscriminatory reasons." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994) (internal citations omitted); Romano v. Brown & Williamson Tobacco Corp., 284 N.J. Super. 543, 551 (citing Fuentes, 32 F.3d at 764-65).

"[F]iring an employee for [making] a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee." Erdman v. Nationwide Ins. Co., 582 F.3d 500, 509 (3d Cir. 2009). On the other hand, an employer is not required to suspend its termination proceedings just because the employee requests medical leave. See, e.g., Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 272, 121 S.Ct. 1508 (2001). "A contrary holding might impede employers from permissible terminations and encourage employees aware of an impending termination to attempt to create their own 'severance package.'" Windfelder v. The May Dep't Stores Co., 93 Fed. App'x. 351, 355 (3d Cir. 2004).

### III. Analysis

As clarified during oral argument and in his Supplemental Brief, Plaintiff alleges both "interference" and "retaliation" claims under FMLA. The Court will address each allegation in turn.

#### A. Interference

Plaintiff fails to point to any evidence in the record that demonstrates a factual issue on his claim of interference. There is no dispute that Plaintiff was entitled to FMLA benefits or that Plaintiff actually took leave. However, Plaintiff fails to cite to evidence

in the record demonstrating that Nalco violated 29 U.S.C. § 2615 by "interfering with, restraining, or denying [his] exercise of FMLA rights." <u>Sconfienza</u>, 307 Fed. App'x at 621. There are no citations to support any of Plaintiff's claims on this issue. For instance, Plaintiff baldly states "Devlin forewarned Berridge that it was not a good idea to contemplate any FMLA leave and Berridge ignored the warning, hence, reprisal." <u>See</u> Pl. Supp. Opp. Br. at 15. In addition, "Berridge was threatened with termination, twice. . ." <u>Id.</u> at 7. Also, "Plaintiff obtained rights *reluctantly* from his Employer; and interference followed." <u>Id.</u> at 12. Finally, "[m]anager Devlin created a *situation* and scapegoated Berridge for recommending another Nalco product. Devlin covered up his own mistake and then solicited something from Christian, in writing, to justify his later decision." <u>Id.</u> at 14. All of the italicized typed-face words appear in Plaintiff's brief without citation to the record. Plaintiff took FMLA leave and does not point to any evidence that Nalco "prevented him from obtaining those benefits." <u>Sarnowski v. Air Brooke Limousine</u>, 510 F.3d 398, 401 (3d Cir. 2007).

Moreover, Plaintiff's claims that "Devlin forewarned [him] that it was not a good idea to contemplate any FMLA leave," <u>see</u> Pl. Supp. Opp. Br. at 15, lacks evidentiary support. Plaintiff ultimately took leave and testified that he was not compelled to return to work by Nalco. Rather, he determined the amount of leave and returned on his own accord.

> Q. In your Complaint, you allege you're compelled to return to work. What do you mean by that?
> A. Well, it really wasn't anybody calling me saying get back to work. It was me wanting to get back to work. Berridge Dep., T 243-4.
> A. I never planned on taking 12 weeks continuously. Ever. I wanted to get back to the job that I loved. I was forced to take the time off because my daughter could not go

> into daycare until she was eight weeks old. When I went out
> on FMLA, my daughter was five weeks old. My wife had to
> go back to work. I had to take care of the baby, period.
>       And I know Brian said, Dave, I wouldn't recommend it.
> It didn't stop me. I had to take that leave for my child.

Berridge Dep. at T. 216-7.

The record does not support a claim of FMLA interference, even assuming Plaintiff's bald statements and opinions testimony are true. "An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." Callison v. City of Phila., 430 F.3d 117, 120 (3d Cir. 2005). Here, Plaintiff took the leave to which he was entitled without regard for the alleged comments by his supervisor. In this regard, summary judgment is granted as to Plaintiff's claim of interference.[3]

To the extent that Berridge's interference claim alleges that Nalco interfered with his FMLA rights under 29 U.S.C. § 2614(a)(1) by failing to restore him to the same or equivalent position following his approved FMLA leave, such an argument will be addressed under the retaliation section, infra.

## B. Retaliation

Plaintiff's retaliation claim lacks support in the record and summary judgment is granted. Plaintiff is unable to establish a prima facie case of retaliation under McDonnell Douglas. Although it is undisputed that Plaintiff engaged in a protected activity by taking leave and that Plaintiff suffered an adverse employment action when

---

[3] Plaintiff also claims that Devlin interfered with Berridge's attempt to gain employment at WaterServ. He baldy states in his brief that he "was the perfect match. His interview was successful with Ken Yankowski. *But* for Devlin interfering, which Plaintiff heard over an open telephone conference line, he would have transferred in, *as an equivalent job.*" Pl. Supp. Opp. Br., 19 (italics in original). There is no authority for this statement.

he was terminated, evidence of a causal connecting is wanting.  Even if Plaintiff could establish a prima facie case, summary judgment is warranted for the same reason: Plaintiff cannot overcome Nalco's legitimate reasons for removing him from Hess, placing him on a PIP, and ultimately terminating his employment.

### 1. Prima Facie Case

Although it is undisputed that Plaintiff's termination constitutes an adverse employment action, the parties dispute whether Plaintiff's removal from the Hess account and/or his placement on PIPs are similarly classified as such.[4]  Viewed separately, the record does not support a conclusion that neither Plaintiff's removal from the Hess account nor his placement on a PIP constitute "materially adverse" employment actions.  The Supreme Court states that "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). "Courts have operationalized the principle that retaliatory conduct must be serious and tangible enough to alter an employee's compensation, terms, conditions or privileges of employment into the doctrinal requirement that the alleged retaliation constitute 'adverse employment action.' " Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997); see also, Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382 (8th Cir. 1994) (finding that a transfer to a

---

[4] Plaintiff was terminated on January 29, 2010 nearly a year after he took FMLA leave.  Such a gap in time is not suggestive of a discriminatory motive and the Court finds that it, alone, cannot form a basis for Plaintiff to establish a prima facie case. See Andreoli v. Gates, 482 F.3d 641, 650 (3d Cir. 2007) (five-month gap between plaintiff's complaint and first adverse employment action, absent additional evidence, is insufficient to raise an inference of causation).

more stressful environment is not a materially adverse employment action where the plaintiff "suffered no diminution in her title, salary, or benefits.")

A materially adverse action must be more that "than a mere inconvenience or an alteration of job responsibilities." Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 886 (6th Cir.1996) (quoting Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)). "A plaintiff claiming retaliation must show that a reasonable employee would have found the alleged retaliatory action 'materially adverse' in that it 'well might have dissuaded a reasonable worker' from exercising a right under the FMLA. DiCampli v. Korman Communities, 257 Fed. App'x. 497, 501 (3d Cir. 2007) (citing Moore v. City of Phila., 461 F.3d 331, 341 (3d Cir. 2006)).

Mr. Berridge agrees that despite his physical removal from Hess, he enjoyed the same title, salary, benefits, expense account and automobile entitlement. See Reynolds v. Dep't of the Army, 439 Fed. Appx. 150, 153 (3d Cir. 2011) (holding that "an adverse employment action [cannot be established] absent accompanying changes to pay, benefits, or employment status.").

> Q. Did anyone tell you in February of 2009 that you were no longer a senior account manager?
> A. No one told me that.
> Q. Did anyone tell you in February of 2009 that you were no longer receiving the same salary as a senior account manager?
> A. No one told me that.
> Q. You still had your automobile in February 2009 that came with the job; did you not, sir?
> A. Yes, I did.
> Q. You still had the expense account in February 2009 that came with the job; did you not, sir?
> A. It was the same expense account.

Berridge Dep., T: 418-19.

Plaintiff offers no objective evidence to suggest that his post FMLA leave employment status was less prestigious or offered fewer opportunities for performance bonuses. <u>See, e.g.</u>, <u>id.</u> (concluding that a transfer to a different department without a change in pay or amenities was not adverse). Likewise, Plaintiff's locale and commute preferences are insufficient to establish that his employment was adversely altered, all other things remaining the same. <u>Id.</u> (citing <u>Hoffman v. Rubin</u>, 193 959, 964 (8th Cir. 1999) (transfer from St. Paul, Minnesota to Chicago, Illinois, not adverse where pay, rank, and other benefits unaltered)).

Although one could speculate that removal from a large revenue generating account, such as Hess, could result in diminution of prestige, it is possible that a company would remove its best salesman from its number one client to help fledgling accounts. Of course, this is not the case here, but Plaintiff offers nothing more than purely speculative assessments about his commissions and subjective preferences for location in support of his argument that the transfer in this case was materially adverse to his employment. <u>See</u> Pl. Ex. AA (Capone and Berridge email chain noting that Berridge desires the Hess placement because it is 15 miles from his house). "[A]ny involuntary transfer, almost by definition, is likely to mean more work, and for a commissioned salesman initially less pay, for the employee who is transferred." <u>Williams v. Bristol-Myers Squibb Co.</u>, 85 F.3d 270, 274 (7th Cir. 1996). In addition, "since commission earnings are proportional to sales, a transfer that has the effect of reducing the employee's sales and hence commissions is an unlikely candidate for discrimination, since the employer in such a case is hurting the employee by hurting itself, that is, by reducing its sales." <u>Id.</u> Thus, even if Plaintiff's speculation about his

commissions has merit, "an indirect and minor effect on commission income ... is not sufficient to transform a lateral transfer into a demotion." Id.

Likewise, there is no objective evidence in the record to suggest that Plaintiff's placement on a PIP, standing alone, is materially adverse. Plaintiff merely speculates that his removal from Hess and placement on a PIP put him in a different posture than other Senior Account Managers. Berridge admitted that he is unaware of the requirements of other Senior Account managers and could only speculate that his job requirements as outlined in the PIPs were a change in the terms of his employment. See Berridge Dep., T. 450-458. Without pointing to any evidence, Plaintiff states that

> "Nelson Christian had also complained about: Bob Yates, Troy Kusler, Tim Roach, and Scott Hagstrom. None of them were terminated at Nalco, but each was transferred to Nalco assignments, pre-existing accounts. Brian Devlin was their boss; he did not issue late or retroactive negative evaluations or PIPs. Plaintiff was obviously treated differently because he took FMLA leave in contrast to them. This is not speculation, but pure fact to be shown at Trial with subpoenaed witnesses. Berridge knew all their work history and issues with Nelson Christian."

Pl. Supp. Opp. Brief at p. 9.

The record shows that Plaintiff's PIP goals were within the Senior Account Manager job description. See Devlin Decl., Ex. B. Under these circumstances, where the PIP is "comprised of directives relating to an employee's preexisting responsibilities[,]" it does not constitute an adverse employment action. Reynolds, 439 Fed. App'x. at 153.

Moreover, even if the removal from Hess or the placement on a PIP, standing alone, could be viewed as an adverse employment action, a causal connection to the leave is lacking. Plaintiff argues that Nalco retaliated against him by taking away his

most lucrative account, and one of Nalco's best customers, because Plaintiff took three weeks of leave to care for his child.  Such an allegation lacks support in the record, especially given the time line of complaints by Hess Technical Service Manager Nelson Christian detailed in the Devlin Declaration.[5]  Plaintiff offers no proof of diminution of wages and/or benefits and cannot support, with any credible evidence, that Nalco jeopardized its financial realization and/or relationship with Hess by removing Plaintiff for the purpose of retaliation.[6]

In fact, as early as April 2007, Hess, specifically Nelson Christian, began expressing doubts about Plaintiff's performance and complained about Plaintiff's lack of communication. Devlin Decl., ¶¶ 19-21.  Devlin noted the deficiencies in Berridge's 2007 Performance Evaluation: "Communications were identified as an area of improvement. I am receiving complaints about your communication again." Devlin Decl., Ex. C. Similar concerns were detailed in Berridge's 2007 Quarterly Performance Review, which notes that "Nelson Christian's response was especially critical." Id., at Ex. D.  In addition, Christian emailed Devlin in May 2008 to inquire whether there was "[a]ny update on Dave's replacement?" Id. at Ex. E. The timing of Plaintiff's first leave having occurred after several communications with Hess regarding the Berridge's poor

---

[5] Devlin declares that Nelson Christian began expressing doubts about Berridge's performance as early as April 2007. Devlin Decl., ¶ 18.  Christian's concerns were communicated to Berridge in Berridge's 2007 Performance Evaluation and 2007 Quarterly Evaluation. Id., Ex. C.

[6] Plaintiff's evidence of his subjective financial performance is unavailing in this regard because Plaintiff's burden is to demonstrate invidious motivation, not just that the decision was wrong or mistaken. In fact, if Plaintiff's evidence is demonstrative of his successful performance, then Nalco would also be hurting itself to carry out discrimination. See, Williams, 85 F.3d at 274 (noting that it is unlikely that a company would jeopardize an employee's commissions, and thereby its own financial gain, to carry out discrimination.). Evidence of poor performance evaluations and emails from Hess associate Nelson Christian provide credible evidence which rebuts Plaintiff's speculation that discrimination was at play. See, generally, Devlin Decl., ¶¶ 10-12, Ex. B.

performance and a desire for a replacement for Berridge, breaks any inferential causal connection between the leave and his removal from Hess and ultimate placement on a PIP. See Clark County Sch. Dist., 532 U.S. at 272 (company not required to suspend adverse employment proceedings because an employee requests leave).

However, even if the removal from Hess can be viewed as an adverse employment action and/or that Plaintiff has successfully plead a series of occurrences (removal from Hess, placement on a PIP, and termination) that, when viewed together, demonstrate a pattern of antagonism, the temporal proximity of the removal from Hess and the protected leave is relevant to the causation prong of the prima facie case. See Kachmar, 109 F.3d at 179. On the connection between temporal proximity and causal connection, the Third Circuit provides:

> It is important to emphasize that it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn. The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific. When there may be valid reasons why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation.

Id. at 178.

Here, giving Plaintiff the benefit of every doubt and viewing the removal from Hess as the first in a chain of events that lead to Plaintiff's termination, the temporal proximity is "unduly suggestive," and "is sufficient standing alone to create an inference of causality and defeat summary judgment" on the prima facie case prong under McDonnell-Douglas. LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007). Plaintiff was removed from his post at Hess just a few weeks from

returning from FMLA leave. "[T]here is no bright line rule as to what constitutes unduly suggestive temporal proximity[.]" Id. at 233. However, the passing of a few weeks as worthy of an inference of discrimination in the prima facie analysis is consistent with the findings of other courts. Id. (citing Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) (finding two days unduly suggestive); Seeger v. Cincinnati Bell Tel. Co., 681 F.3d 274, 283 (6th Cir. 2012) (three weeks); Wierman v. Casey's Gen. Stores, 638 F.3d 984, 994 (8th Cir. 2011) (four days); cf. McCann v. Tillman, 526 F.3d 1370, 1376 (11th Cir. 2008) (five days in Title VII retaliation case)). As a result of this inference alone, Plaintiff can establish a prima facie case of discrimination.[7]

### 2. Nalco's Proffered Reason

Nalco offers legitimate, non-discriminatory, reasons for its treatment of Plaintiff post FMLA leave. As noted supra., Nalco cites to several communications with Hess Manager Nelson Christian that demonstrate that that Plaintiff was performing unsatisfactorily according to Hess and that Hess desired a change. See Devlin Decl., ¶¶ 18-32; Exs. E, G. In addition, the concerns of Mr. Christian are detailed in Plaintiff's performance evaluations for 2007 and 2008 and Plaintiff's other shortcomings are discussed.[8] Id., Exs. C, D. Berridge also had a practice of working from home, which is

---

[7] Even though the Court finds that Plaintiff fails to demonstrate that his removal from Hess, standing alone, constitutes an adverse employment action, Plaintiff's claim may still proceed at this juncture. Because the Court gives Plaintiff the benefit of every doubt on summary judgment, assuming that his removal from Hess, his placement on PIPs, and ultimate termination sufficiently demonstrate a pattern of antagonism, the temporal proximity inference alone can defeat summary judgment on the prima facie case. Kachmar, 109 F. 3d at 179.

[8] Plaintiff speculates that his evaluation for 2008 was given to him late for post hoc coverup reasons. Mr. Devlin stated that because Plaintiff was on leave in early January, the time during which evaluations are discussed, he was unable to meet with Berridge until May. After Berridge's return from FMLA leave, he took other leave for workers' compensation related to a car accident and for personal medical attention. There is

not permitted under Nalco's policies. Id.  Finally, Berridge admits that he failed to adhere to the requirements and goals detailed in the PIPs. Berridge Dep., T:278-286.  As a result, he was removed from Hess, placed on a PIP, and terminated him for failing to achieve the goals of the PIP. Nalco satisfies its burden under the second prong of McDonnell-Douglas and the burden shifts to the Plaintiff to demonstrate that the forgoing reasons are pretextual. See Burdine, 450 U.S. at 260; McDonnell Douglas, 691 F.3d 308.

### 3.  Berridge Fails to Overcome Nalco's Proffered Reasons

To avoid summary judgment under the third step of the McDonnell Douglas framework, Berridge must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764. The plaintiff must adduce evidence sufficient to "allow a factfinder reasonably to infer that each of the employer's proffered nondiscriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action." Id. (emphasis in original) (internal citation omitted). To do so, the plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." Id. at 765

---

nothing to suggest that anything other than Berridge's unavailability to meet with Mr. Devlin caused the delay in Berridge's receipt of the 2008 performance review.

(emphasis in original)(internal quotations and citations omitted). It is not sufficient to show that the employer's decision was wrong, mistaken, imprudent or incompetently made. Id.

Plaintiff is unable to carry this burden.

Starting at the beginning of what Plaintiff claims is the first adverse employment action, there is a dispute over when Josh Rockwell physically replaced Plaintiff at Hess. Plaintiff claims that it happened upon his return from FMLA leave, on February 4, 2009. Berridge Dep., T. 416; 13-14.  However, he agrees that Rockwell accompanied him to Hess in December 2008, before Berridge's leave. Id. T. 370; 3-11.  Berridge is unaware when the decision to replace him with Rockwell was made and he was not privy to that information. Id. at T. 145; 4-22.  Rockwell offers an affidavit stating that he was told that he was replacing Berridge in 2009, after Berridge returned from leave. Devlin states that he made the decision in response to Nelson Christian's complaints in September, 2008. Devlin Decl., ¶ 26.  Nonetheless, no one disputes that Berridge was told of the decision on February 4, 2009.

Plaintiff admits that he purposefully did not endeavor to achieve or embrace any of the items outlines in the PIPs because he believed his placement a PIP was a material alteration of his job and was unlawful under the FMLA.  Id. at 278-286.  Berridge complained to Human Resources about the legality of the May 18, 2008 PIP and interpreted a conversation with and/or an email from Alenda Young or Rhonda Albright, both Nalco Human Resources Representatives, as a Nalco directive that he ignore the goals in the PIP because they were illegal.

> A. What I do recall is saying that the document is illegal and violates the FMLA. And she says we're going to investigate, so don't do anything until we get back to you and.
>
> Q. Who said that to you?
>
> A. Rhonda Albright said they were going to investigate, and for me not to do anything. That is basically—this May 18th dated performance improvement plan held no weight until they got back to me with a conclusion.

Id. 278.[9]

Plaintiff relies on an email from Ms. Albright dated May 28, 2009 that instructs him not to speak to Devlin about the PIP until legal has had a chance to weigh in. Berridge Ex. X. Plaintiff contends this email absolved him from compliance with the PIP. In addition, Plaintiff ignored the requirements in a subsequent and third PIP, dated September 4, 2009.[10] On July 16, 2009, Ms. Young circulates a Memorandum that concludes that Berridge's claims of retaliation and interference under the FMLA were unsubstantiated after an internal Nalco investigation. Berridge agrees that he received this report prior to the September 4, 2009 PIP and that the goal of the September 4, 2009 PIP was to enable him to remain in Nalco's employ. Berridge Dep. at 447. Nonetheless, Berridge did not comply or attempt to comply with the goals of the third PIP because he continued to dispute its legality and had made a complaint with the United States Department of Labor. Id.

---

[9] Plaintiff's brief, without any citation to the record, makes the following statement: "Company instruction from Young issued to Berridge was: '*Not to work on the PIP or have any contact with Brian Devlin'[.]*" Pl. Supp. Br. 25.

[10] Plaintiff characterizes the PIPs as "ever changing" in his brief. It appears that the second PIP reduced the goals of the initial PIP in an effort to make the goals "more attainable." Def. Stat. of Facts, ¶¶ 56-60. Plaintiff offers no evidence to the contrary.

Plaintiff points to no credible evidence in the record to suggest that the actions taken by Nalco that lead up to his termination were motivated by discriminatory animus. Although Plaintiff claims that he "had absolutely no knowledge of any performance problems between 2006-2008 and that his sales revenue made him a valuable employee" and that he "had strong relationships and only positive feedback," Plaintiff cites to no authority for this proposition. Pl. Supp. Opp. Br. at 3. In addition, he attempts to diminish the import of the opinions of Hess Manager Nelson Christian by stating that Christian is a "mere technician." Pl. Supp. Opp. Br. 3. While some of the performance reviews suggest that Berridge received favorable feedback from some of the Hess employees, a running theme starting with the first performance evaluation in 2007 is a concern over Berridge's relationship with Hess Manager Nelson Christian. See, Devlin Decl. Exs. C-D.

For this reason, Berridge's insistence that Hess Operations Manager Mike Capone had no objection to Berridge remaining at Hess is unavailing. First, the statement is selective in that it predates Capone being contacted by Alenda Young in the course of her investigation on behalf of Nalco. See Berridge Ex. U. Young's report, dated after the email supplied by Berridge from Capone, states that Capone was aware of performance problems, is happy with Josh Rockwell, and feels that Berridge's placement in an internal Nalco matter. See Berridge, Ex. V. Either way, Plaintiff's evidence may demonstrate that Nalco's "decision was wrong or mistaken," but fails to show beyond a preponderance of the evidence "such weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,'

and hence infer 'that the employer' did not act for [the asserted] nondiscriminatory reasons." <u>Fuentes</u>, 32 F.3d at 765 (internal citations omitted).

As a result summary judgment is granted.

## IV.  Conclusion

Berridge fails to demonstrate that Nalco interfered with his FMLA rights.  In addition, he fails to make out a prima facie case of retaliation, standing alone, for his removal from Hess and his placement on a PIP because the separate actions are not adverse employment actions.  Moreover, his termination having come over a year after he took FMLA leave does not give rise to an inference of discrimination.  Even if, viewing the facts of the case in a light most favorable to Plaintiff, an inference of discrimination can be found in the antagonistic pattern stemming from Plaintiff's removal from Hess, placement on a PIP and ultimate termination, on the thinness of the temporal proximity of the removal from Hess and Plaintiff's protected leave, that would establish a prima facie case, Plaintiff cannot overcome his burden of demonstrating that the reasons given for his termination are pre-textual.  Plaintiff himself agrees that he purposefully did not endeavor to comply with the goal of the PIPs because he disputed the PIPs legality, even after the internal Nalco investigation concluded that no discriminatory animus played a role in the PIPs.  Nalco argues that Mr. Berridge fails to even make out a *prima facie* "retaliation" claim, as he "cannot establish that any of Nalco's decisions towards him were causally related to his FMLA leave," as "the record is clear that Nalco placed Plaintiff on several PIPs, and eventually terminated his employment, because of his failure to satisfy the minimum requirements of his position

and to comply with the PIPs."  (Def.'s Br. Summ. J. 19.)  The Court agrees and grants summary judgment in favor of Defendant.

An appropriate Order shall issue.

Dated: January 30, 2014

s/ Joseph H. Rodriguez
Hon. Joseph H. Rodriguez,
United States District Judge
